IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLARISSA L. PHALO,            :

    Plaintiff,            :

vs.                           :        CA 15-0294-C

CAROLYN W. COLVIN,            :
Acting Commissioner of Social Security,
                              :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 11 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 12 (endorsed order of reference).) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the March 30, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 11 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to status-post cerebrovascular accident, neck pain of unknown etiology, diabetes mellitus, peripheral neuropathy, obesity, carpal tunnel syndrome, a headache disorder, uterine fibroids, and peripheral vascular disease. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1.   **The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.**
>
> 2.   **The claimant has engaged in substantial gainful activity for a portion of the time since June 30, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).**
>
> The evidence of record establishes that the claimant was hired by Employment Liability Management, Inc., in August 2012. She earned $2,008 in the third quarter of 2012, $9,486 in the fourth quarter of 2012, and $6,193 in the first quarter of 2013. At the hearing, the claimant testified that she was paid $15 per hour but only worked part time and stopped that work in March 2013. Based on her testimony, in order to earn $9,486 in the fourth quarter of 2012, at $15.00 per hour[,] the claimant would have to average 48 hours per week during the thirteen weeks of the fourth quarter of 2012.
>
> Because this work occurred over the span of seven months, it [does] not meet the criteria of an unsuccessful work attempt. However, because this work does not cover the entire relevant period, I proceed with the five-step analysis.
>
> 3.   **The claimant has the following severe impairments: status-post cerebrovascular accident, neck pain of uncertain etiology, diabetes mellitus, peripheral neuropathy, obesity, carpal tunnel syndrome, a headache disorder, uterine fibroids, and peripheral vascular disease (20 CFR § 404.1520(c)).**
>
> . . .
>
> 4.   **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).**
>
> . . .
>
> 5.   **After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a). The claimant**

**can lift and carry 10 pounds occasionally and items of negligible weight frequently. She can stand and/or walk for a total of 2 hours in an eight-hour day, but no more than 20 minutes at one time. She can sit for a total of 8 hours in an eight-hour day, but no more than 1 hour at a time. She can frequently push and/or pull with the right upper extremity, but can occasionally push and/or pull with the left upper extremity. She can frequently push and/or pull with the right lower extremity, but can occasionally push and/or pull with the left lower extremity. She is precluded from balancing but can occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl, and occasionally climb ramps and stairs. She is precluded from climbing ladders, ropes, or scaffolds. She can frequently reach, bilaterally; frequently handle, bilaterally; frequently finger, bilaterally; and frequently feel, bilaterally. She can tolerate occasional exposure to vibrations, occasional exposure to extreme heat, occasional exposure to extreme cold, and occasional exposure to humidity. She must avoid all exposure to unprotected heights and avoid all exposure to dangerous machinery. She would have one unscheduled absence per month.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

.   .   .

The evidence of record indicates that the claimant experienced a transient ischemic attack (TIA) in May 2008. At that time, she also received diagnoses of diabetes mellitus and obesity. A magnetic resonance image (MRI) of her neck showed normal carotids but moderate proximate stenosis in her left vertebral artery. However, an MRI of her brain, an x-ray of her chest, and an electrocardiogram (EKG) revealed normal findings. Notes also indicate that due to her obesity, she was counseled about her diet.

Occupational therapy records from June and July 2008 note the claimant's cerebrovascular accident (CVA) from [May] 2008 and indicate that she had hemiparesis. Those records indicate that the claimant had severe pain on June 11, had numbness in her fingertips but no pain on June 18, was able to perform upper extremity exercises, and had better control of her left upper extremity.

June 2009 records from Infirmary West note examination findings that include elevated glucose, yet normal extremities. The claimant was diagnosed with a tooth abscess, uncontrolled diabetes mellitus, a history of CVA, and morbid obesity. Office treatment records from Franklin

3

Primary Health Center from October 2009 to December 2010 note that the claimant generally presented for follow-up treatment. She was diagnosed with diabetes mellitus and a history of CVA. Examinations revealed obesity, but otherwise her examination[s] were generally normal and she indicated that her overall health was fair. Office treatment records from IMC Obstetrics & Gynecology noted generally normal physical examination findings other than obesity.

The evidence of record includes treatment notes from August 2001 to May 2011 from Mobile Adult Care. The claimant generally presented with complaints of radiating arm pain. Examinations during the period of adjudication, however, revealed obesity but also that the claimant had a full range of motion. She was diagnosed with cervicalgia, diabetes mellitus, and hemiplegia on her non-dominant side. July 2008 records note that the claimant's CVA and diabetes mellitus were stable, while October 2010 and April 2011 notes indicate that the claimant had a normal gait, as well as no cyanosis, edema, or clubbing in her extremities. May 2011 records note elevated glucose levels and a diagnosis of diabetes mellitus. May 2011 emergent records from Infirmary West note that the claimant presented with complaints of a toothache but an examination was otherwise normal. Likewise, July 2011 records from Franklin Primary note despite diagnoses of diabetes mellitus and a history of CVA, an examination was essentially normal other than the claimant's obesity.

In August 2011, the claimant underwent a consultative examination of internal medicine performed by Thomas H. Wyatt, M.D. At that time, she complained of weakness in her left arm and leg. Though she received diagnoses of diabetes mellitus, neck pain, and past CVA, an examination revealed normal range of motion in her neck and arms, a "gait with mild ataxia, but no spasticity," inability to squat, inability to touch toes, inability to heel-toe walk, reduced grip strength on left side, yet good motor strength in upper and lower extremities, normal sensory and reflexes, and no atrophy.

In September 2011, and November 2011 to January 2012, the claimant received additional treatment from Mobile Adult Care. Those records note complaints of periodic headaches, dizziness, and left-sided weakness, for which the claimant received diagnoses for diabetes mellitus and migraine headaches. Other than obesity, however, examinations revealed essentially normal findings, including a normal gait.

February 2012 treatment records from the University of South Alabama OBGYN Center note diagnoses of uterine fibroids and diabetes mellitus, yet an examination that was essentially normal other than obesity. June 2012 records from Franklin Primary note a diagnosis of diabetes mellitus, and though an examination revealed obesity, the claimant demonstrated normal range of motion, strength, and stability in all of her extremities. April 2012 records from the University of South Alabama OBGYN Center noted diagnoses of uterine fibroids and diabetes mellitus, yet an

4

examination revealed only obesity and a negative pathological report of the fibroid.

April to June 2012 records from Mobile Adult Care note that the claimant presented with complaints of numbness in her hands. The claimant was diagnosed with diabetes mellitus and carpal tunnel syndrome. An x-ray of the claimant's chest in April 2012 was normal, review[] of systems was generally negative, and other than obesity, examination findings revealed essentially normal findings, including May 5, 2012, May 10, 2012, and June 1, 2012 notes that indicated the claimant's gait was normal.

September 2012 notes from Mobile Adult Care note swelling and decreased sensation in the claimant's left foot, yet note no current foot ulcers or history of foot ulcers. February 2013 records from Mobile Adult Care note complaints of headaches and diagnoses of morbid obesity and diabetes mellitus. However, examination findings from that time revealed only obesity and note no musculoskeletal complaints or symptomology.

Finally, in January 2013, the claimant underwent a consultative examination performed by Thomasina Anderson Sharpe, M.D. At that time, the claimant complained of a history of CVA. Dr. Sharpe noted that the claimant had problems with balance but also that she was able to get on and off the examination table without difficulty. She had a broad-based gait. Though she had decreased sensation in her left foot, she had normal grip strength, muscle tone, and strength, with no atrophy, bilaterally. Dr. Sharpe diagnosed the claimant with CVA, hemiplegia, gait and balance disturbance, diabetes mellitus, and a history of fibroid tumors.

The aforementioned objective findings, as well as the claimant's admissions and activities reduces the overall credibility of her allegations and undermines any alleged disabling limitations from her status-post cerebrovascular accident, neck pain of uncertain etiology, diabetes mellitus, peripheral neuropathy, obesity, carpal tunnel syndrome, a headache disorder, uterine fibroids, and peripheral vascular disease. Though the claimant alleges she has a weakened left side, she indicates that she is able to drive a car and can shop for 45 to 60 minutes. She goes on occasional walks with a friend. She testified that her diabetes was getting better. She has been counseled on the importance of a proper diet, but records repeatedly note obesity. The claimant indicated to the physicians at Franklin Primary that her overall health was "fair."

Most notable, however, is evidence supporting the claimant's ability to work during the period of adjudication. The claimant alleges she became unable to work in June 2009. In medical records from April 2010, the claimant indicated that she had tried to work since that time but had difficulty maintaining employment. At the August 2011 consultative examination, the claimant indicated that she did not officially stop work until June 2011. At the September 2012 initial hearing, the claimant testified that she had been hired by a childcare service two months prior

5

and was having difficulty working. At the July 2013 supplemental hearing, the claimant testified that she had worked at the child care facility part time, up to five and one-half hours per day and twenty hours per week, and had been paid $15 per hour. As pointed out in Finding 2 above, the claimant's earnings record indicates that the claimant worked at or above SGA levels in the fourth quarter of 2012 and the first quarter of 2013. Those records indicate that at the claimant's testified $15 per hour wage, she would have averaged 48 hours per week for the thirteen weeks in the fourth quarter of 2012. The claimant's demonstrated ability to work undermines the severity of her impairments. As a result, I find the claimant's allegations regarding the intensity, duration, and persistent of h[er] symptomology to be less than fully credible.

Accordingly, the aforementioned objective findings, including her repeatedly relatively normal gait, as well as the claimant's admitted activities and abilities, including her admission to driving and her notable work after the alleged onset date, all indicate that the claimant's symptomology resulting from status-post cerebrovascular accident, neck pain of uncertain etiology, diabetes mellitus, peripheral neuropathy, obesity, carpal tunnel syndrome, a headache disorder, uterine fibroids, and peripheral vascular disease are not completely disabling. However, I note that the claimant's occasional symptomology can reasonably be expected to cause [] limitations to the claimant's ability to function, and has limited the claimant to less than the full range of sedentary work, as set forth in Finding 5, above. The limitation to lifting and carrying 10 pounds occasionally and items of negligible weight frequently; standing and/or walking for a total of 2 hours in an eight-hour day, but no more than 20 minutes at one time; sitting for a total of 8 hours in an eight-hour day, but no more than 1 hour at a time; the preclusion from balancing, exposure to unprotected heights and dangerous machinery, and climbing ladders, ropes, or scaffolds accommodate her cerebrovascular accident, diabetes mellitus, peripheral neuropathy, obesity, carpal tunnel syndrome, headache disorder, uterine fibroids, and peripheral vascular disease. The limitation to frequently pushing and/or pulling with the right upper extremity, but occasionally pushing and/or pulling with the left upper extremity; frequently pushing and/or pulling with the right lower extremity, but occasionally pushing and/or pulling with the left lower extremity; occasionally stooping, kneeling, crouching, crawling, and climbing ramps and stairs; frequently reaching, handling, fingering, and feeling, bilaterally, accommodates left-sided weakness from her CVA, diabetes mellitus, neck pain of uncertain etiology, and peripheral neuropathy. The limitation to occasional exposure to vibrations, extreme heat, extreme cold, and humidity, and allowance for one unscheduled absence per month accommodates her headache disorder.

As for the opinion evidence, I give substantial weight to the January 2013 physical capacities evaluation (PCE) of Dr. Sharpe, which limits the claimant to work at less than a full range of the light exertional level. Dr. Sharpe also indicates that the claimant is able to sit for a full eight-hour

day, adds restrictions in the use of the claimant's upper and lower extremities, and adds a preclusion against climbing ladders or scaffolds, balancing, and stooping. I give this opinion substantial weight because it is generally consistent with the treatment records and examination evidence. I note that the limitations in Finding 5, above, are generally more restrictive than Dr. Sharpe's opinion, as I have viewed the claimant's allegations in a light most favorable to the claimant. I note that Dr. Sharpe's preclusion against stooping is not supported by any evidence in the record, and accords this determination no weight, instead noting that the evidence of record supports a limitation to occasional stooping.

I give substantial but not significant weight to the September 2012 diabetes questionnaire completed by Eddie Pace, M.D. Dr. Pace indicates that the claimant suffers from insulin dependent diabetes, diabetic neuropathy, and has moderately severe limitation on her ability to perform work activity. This opinion is generally consistent with the treatment records and the overall evidence of record, but is totally inconsistent with the claimant's ability to work during and after the opinion, during which time the claimant earned $2,008 in the third quarter of 2012, $9,486 in the fourth quarter of 2012, and $6,193 in the first quarter of 2013.

I give no substantial weight to the September 2012 system assessment completed by Dr. Pace. Dr. Pace indicates that he has treated the claimant for 11 years; the claimant's impairments cause moderately severe limitations from headaches, left-sided weakness, and numbness of her hands and feet; and the claimant is therefore not capable of gainful employment. Initially, I note that any opinion regarding the claimant's ability to work full-time in a competitive environment is an opinion reserved to the Commissioner. This opinion, however, is wholly inconsistent with ability to work during and after the opinion, during which time the claimant earned $2,008 in the third quarter of 2012, $9,486 in the fourth quarter of 2012, and $6,193 in the first quarter of 2013.

In sum, based upon a review of the medical evidence of record and the claimant's admitted activities and abilities, I find the evidence does not support the claimant's allegations of totally incapacitating symptomatology. The record fails to document persistent, disabling loss of functional capacity resulting from the claimant's severe impairments. The above residual functional capacity assessment is supported by a preponderance of the most credible evidence of record, including objective evidence, opinion evidence, and the claimant's indications and admissions as to activities and abilities. After considering the entirety of the record, I conclude that the claimant can perform a range of work consistent with what is set forth in Finding 5, above.

**6.     The claimant is capable of performing past relevant work as an accountant and accounting clerk. This work does not require the**

**performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

Based on the evidence of record, the claimant has past relevant work [as] an accountant (Dictionary of Occupational Titles [] Code 160.162-018, sedentary, skilled) and accounting clerk (DOT Code 216.482-010, sedentary, skilled). This work qualifies as past relevant work because it was performed during the last fifteen years, it was performed at substantial gainful activity levels, and it was performed for a long enough period of time for the claimant to learn the jobs.

In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed. At the supplemental hearing, the vocational expert testified that a hypothetical individual with the functional limitations in Finding 5, above, was still able to perform the claimant's past work at the sedentary exertional level, specifically as an accountant and accounting clerk.

**7.     The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2009, through the date of this decision (20 CFR 404.1520(f)).**

(Tr. 23, 24, 26 & 27-32 (internal citations & footnote omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

8

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as an accountant and accounting clerk, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, the sole issue raised by Phalo is that the ALJ erred in failing to assign controlling weight to the opinions of the treating physician, Dr. Eddie Pace. On September 28, 2012, Pace completed both a symptoms assessment form (Tr. 460) and a diabetes questionnaire (Tr. 461).[4] On the symptoms assessment form, Pace indicated that he had treated plaintiff for approximately 11 years for migraines, hypertension, diabetes, carpal tunnel syndrome, hyperlipidemia, and an old stoke. (Tr. 460.) Pace identified the symptoms plaintiff experiences from these conditions to be headaches, left-sided weakness, and numbness in her hands and feet and indicated that physical activity—such as walking, standing, bending, lifting, etc.—would greatly increase her symptoms so as to cause distraction from or total abandonment of task. (*Id.*) Pace also opined on this form that plaintiff could not engage in any form of gainful

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[4] These forms were supplied to Pace by plaintiff's attorneys, Gardberg & Clausen, P.C. (*See id.*)

employment on a repetitive, competitive and productive basis over an eight-hour workday, forty hours a week, without missing more than 2 days of work per month. (*Id.*) On the diabetes questionnaire, Pace indicated that plaintiff's Type 1 insulin-dependent diabetes mellitus was not under good control and causes her to suffer physical limitations, like blackouts, dizziness, and numbness in extremities, and, as well, she suffers from diabetic neuropathy (specifically, loss of protective sense with toe deformity and callus buildup) and retinitis proliferans (specifically, diabetic retinopathy noted on a January 27, 2012 eye exam). (Tr. 461.) Pace opined that Phalo's diabetes would have a moderately severe degree of limitation on her ability to perform work activity and that she has been so impaired for approximately 3 years. (*Id.*)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

In this case, the ALJ specifically accorded substantial—but not significant—weight to Pace's diabetes questionnaire and no substantial weight to the system assessment form. (Tr. 31.)

> I give substantial but not significant weight to the September 2012 diabetes questionnaire completed by Eddie Pace, M.D. Dr. Pace indicates that the claimant suffers from insulin dependent diabetes, diabetic neuropathy, and has moderately severe limitation on her ability to perform work activity. This opinion is generally consistent with the treatment records and the overall evidence of record, but is totally inconsistent with the claimant's ability to work during and after the opinion, during which time the claimant earned $2,008 in the third quarter of 2012, $9,486 in the fourth quarter of 2012, and $6,193 in the first quarter of 2013.
>
> I give no substantial weight to the September 2012 system assessment completed by Dr. Pace. Dr. Pace indicates that he has treated the claimant for 11 years; the claimant's impairments cause moderately severe limitations from headaches, left-sided weakness, and numbness of her hands and feet; and the claimant is therefore not capable of gainful employment. Initially, I note that any opinion regarding the claimant's ability to work full-time in a competitive environment is an opinion reserved to the Commissioner. This opinion, however, is wholly inconsistent with ability to work during and after the opinion, during which time the claimant earned $2,008 in the third quarter of 2012, $9,486 in the fourth quarter of 2012, and $6,193 in the first quarter of 2013.

(*Id.*) Given the concession by plaintiff's counsel that the ALJ properly rejected the opinion by Pace related to Phalo's ability to work fulltime in a competitive environment (*compare id. with* Tr. 460 (Pace opined that plaintiff could not engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight-hour workday, forty hours a week, without missing more than 2 days of work per month)), since that is a dispositive issue reserved to the Commissioner, *compare Kelly v. Commissioner of Social Security,* 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether

the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]") *with Lanier v. Commissioner of Social Security,* 252 Fed.Appx. 311, 314 (11th Cir. Oct. 26, 2007) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner."), the essential issue becomes whether the ALJ erred in failing to accord controlling weight to Dr. Pace's opinions (1) that physical activity—such as walking, standing, lifting, bending, repetitive movement of the extremities, etc.—would greatly increase Phalo's symptoms (that is, headaches, left-sided weakness, and numbness of the hands and feet) to such a degree as to cause distraction from, or total abandonment of, task (Tr. 460); and (2) that plaintiff's diabetes would have a moderately severe degree of limitation upon her ability to perform work activity (Tr. 461). The ALJ, of course, declined to afford these opinions controlling (or even significant or substantial) weight in light of the record evidence establishing that plaintiff engaged in substantial gainful activity during the third and fourth quarters of 2012 and the first quarter of 2013 (Tr. 31; *compare id. with* Tr. 23), that is, she engaged in work activity before, during, and after Dr. Pace completed the diabetes questionnaire and the system assessment form (*compare id. with* Tr. 460-461).

     A review of the transcript reflects that Phalo filed an application for disability insurance benefits alleging she became unable to work on June 30, 2009 (Tr. 188) and though her earnings records from the third quarter of 2009 until the third quarter of 2012 show no earnings (*see id.* at 195-218), those same records reflect that in the third quarter of 2012 plaintiff had earnings of $2,008.00, in the fourth quarter of 2012 she had earnings of $9,486.00, and in the first quarter of 2013 she had earnings of $6,193.00 (*see id.* at 220-223). In light of the fact that Dr. Pace completed his diabetes questionnaire and system assessment forms at a time when plaintiff was working as an accountant at a

13

level signifying substantial gainful activity (*compare* Tr. 220-223 *with* Tr. 23), *see* 20 C.F.R. § 1574, the Court finds no error in the ALJ affording no weight to Pace's opinions—rendered on September 28, 2012—(1) that physical activity—such as walking, standing, lifting, bending, repetitive movement of the extremities, etc.—would greatly increase Phalo's symptoms (that is, headaches, left-sided weakness, and numbness of the hands and feet) to the degree to cause distraction from, or total abandonment of, tasks; and (2) that plaintiff's diabetes would have a moderately severe degree of limitation upon her ability to perform work activity. In other words, this Court finds that the ALJ was free to reject the foregoing opinions of Dr. Pace because the evidence of record supported a contrary conclusion. *Compare Gilabert, supra,* 396 Fed.Appx. at 655 (good cause exists for not affording a treating physician's opinion substantial or considerable weight where the evidence supports a contrary finding) *with Ellison v. Barnhart,* 355 F.3d 1272, 1275-1276 (11th Cir. 2003) (the fact that the claimant worked for several years in spite of his seizure disorder, combined with the medical records of several doctors indicating that plaintiff's seizure disorder did not prevent him from performing unskilled work, constituted substantial evidence supporting the ALJ's decision to discredit doctor's opinion that plaintiff was totally disabled).[5]

In light of the foregoing, and because plaintiff raises no other issues, the Commissioner's fourth-step determination is due to be affirmed. *Compare Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 49 & 50 (11th Cir. Oct. 26, 2012) ("[S]tep four assesses the claimant's RFC to determine whether the claimant is capable

---

[5] The evidence supporting a contrary conclusion is not limited to plaintiff's earnings records, however, as evidence from consultative examiners Dr. Thomasina Sharpe (Tr. 465-474) and Dr. Thomas Wyatt (Tr. 417), as well as numerous clinical findings noted by Dr. Pace and other doctors at Mobile Adult Care, LLC, including normal gait and no focal deficit (*see, e.g.,* Tr. 356, 424, 445, 449 & 453), also support a contrary conclusion.

of performing 'past relevant work.' . . . A claimant's RFC takes into account both physical and mental limitations. . . . Because more than a scintilla of evidence supported the ALJ's RFC assessment here, we will not second-guess the Commissioner's determination.") *with Phillips, supra,* 357 F.3d at 1238-1239 ("At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity []; and (2) the claimant's ability to return to [his] past relevant work. As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. Moreover, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all the relevant medical and other evidence in the case. Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to [his] past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . If the claimant can return to [his] past relevant work, the ALJ will conclude that the claimant is not disabled. If the claimant cannot return to [his] past relevant work, the ALJ moves on to step 5." (internal citations, quotation marks, and brackets omitted; brackets added)).

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 15th day of April, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**